FILE@
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 MAY 22  P 4: 40

CLERK'S OFFICE
AT BALTIMORE

BY _____ PUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Ayn B. Ducao
Assistant United States Attorney
Ayn.Ducao@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4819
MAIN: 410-209-4800
FAX: 410-962-3091

May 5, 2014

Harry D. McKnett, Esquire
5430 Lynx Lane, Suite 241
Columbia, MD 21044

Re:    United States v. Cheralyn Crawford
       Criminal No. RDB-13-0530

Dear Mr. McKnett:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by May 12, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to plead guilty to Count Three of the Second Superseding Indictment, which charges him with Use of Interstate Facilities to Promote a Business Enterprise involving Prostitution Offenses (sex trafficking of a minor), in violation of 18 U.S.C. §1952(a)(3). The Defendant admits that she is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Beginning on at least May 12, 2013 and continuing through on or about June 17, 2013, in the District of Maryland,

a.     The Defendant used a facility in interstate commerce;

b.     The use of the facility in interstate commerce was done with the intent to promote, manage, establish or carry on an unlawful activity, that is, a business enterprise involving prostitution offenses (sex trafficking of a minor) in violation of 18 U.S.C. §1591(a); and

c.     The Defendant thereafter performed or attempted to perform an act in furtherance of the unlawful activity.

### Penalties

3.     The maximum sentence provided by statute for the offense in Count Three to which the Defendant is pleading guilty is as follows: five years imprisonment, a $250,000 fine and three years of supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.     The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.   Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify.  If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e.      If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the statement of the facts of her case.  Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant

3

recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

2.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following guidelines (except where noted):

        **a.**    **Use of Interstate Facilities in Aid of Business Enterprise Involving Prostitution Offense (Sex Trafficking)- Count Three**

        (1)      While this Office and the Defendant agree that the underlying unlawful activity is sex trafficking of a minor in violation of 18 U.S.C. § 1591, the parties do not agree as to the initial base offense level. The Defendant believes that the base offense level is 24 pursuant to U.S.S.G. § 2G1.3(4). This Office believes that the base offense level is 30 under U.S.S.G. §§ 2G1.3(a)(2) and 2X1.1;

        (2)      Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), there is a two (2) level increase because the offense involved the use of a computer and interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor (SUBTOTAL: EITHER 26 OR 32);

4

(3)    Pursuant to U.S.S.G. § 2G1.3(b)(4), there is a two (2) level increase because the offense involved the commission of a sex act or sexual contact (SUBTOTAL: 28 OR 34).

Thus, the adjusted offense level for Count One is between **28 and 34.**

### b.    ACCEPTANCE

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

Accordingly, the final adjusted offense level is between **25 and 31**.

### Obligations of the United States Attorney's Office

7.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

8.    The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

### Waiver of Appeal

9.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

10.     The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

6

## Court Not a Party

11.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

12.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Ayn B. Ducao
Assistant United States Attorney


I have read this agreement, including the Sealed Supplement, and carefully reviewed
every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I
have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not
wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-22-14
_____
Date

_____
Cheralyn Crawford


I am Cheralyn Crawford's attorney. I have carefully reviewed every part of this
agreement, including the Sealed Supplement, with her. She advises me that she understands and
accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and
voluntary one.

_____
Date

_____
Harry D. McKnett, Esquire

## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Cheralyn Crawford (the Defendant), age 25, is a resident of Baltimore, Maryland.

On the evening of Monday June 17, 2013, members of the Maryland Child Exploitation Task Force, which included officers/agents from the Baltimore County Police and the Maryland State Police (MSP), recovered a 14 year old female (Victim) from the Towson East Motel on Joppa Road in Baltimore. Victim was located after law enforcement viewed a picture of her on a known Internet web site that advertises for prostitution, backpage.com, and called the number on the advertisement. Undercover officers made a "date" for prostitution with Victim, who led them to her location.

Following her recovery and during subsequent interviews of Victim, it was learned that Victim had been performing commercial sex acts from that hotel for approximately four days under the direction of co-defendant Kenneth Robinson and with the assistance of the Defendant and co-defendant Craig Judy. Victim stated that she had been staying with the Defendant and Judy and that the Defendant and Judy, at co-defendant Robinson's direction, posted the commercial sex advertisements for Victim on backpage.com. Victim also stated that on June 17, 2013, shortly before Victim's recovery by law enforcement, the Defendant called Victim to tell the Victim not to do any more prostitution "dates" because Judy had observed police at the back of the motel. Victim stated that the Defendant took photos of the Victim to be used on the backpage.com commercial sex advertisements.

The Defendant and co-defendant Judy were also located in the vicinity of the Towson East Motel on the evening of June 17, 2013, shortly after the recovery of Victim. During a post-*Miranda* statement, the Defendant stated that she met Victim through Robinson and posted the photos of Victim for the backpage.com commercial sex advertisements using co-defendant Jeffrey Clark's cellular phone, which could access the Internet. The Defendant had an opportunity to observe Victim for approximately four days.

The Internet is a facility used in interstate commerce. Surveillance video from Walmart earlier in the day on June 17, 2013 shows the Defendant, Judy and Victim together. The Defendant did not meet or know about Victim prior to June 14, 2013.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.

Cheralyn Crawford
Defendant

I am Ms. Crawford's attorney.  I have carefully reviewed the statement of facts with her.

Harry D. McKnett, Esquire